David H. Bernstein (dhbernstein@debevoise.com)*
Megan K. Bannigan (mkbannigan@debevoise.com)
Jared I. Kagan (jikagan@debevoise.com)*
Marissa Baron (mbaron@debevoise.com)*
Rachel Burns (rmburns@debevoise.com)*
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, New York 10001
(212) 909-6000
*Pro Hac Vice forthcoming

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

-----------------------------------------------------------------x

|  |  |
|---|---|
| NOVO NORDISK INC., | Civil Action No. _____ |
| Plaintiff, |  |
| v. | **COMPLAINT** |
| ELI LILLY AND COMPANY and LILLY USA, LLC | **JURY TRIAL DEMANDED** |
| Defendants. |  |

-----------------------------------------------------------------X

Plaintiff Novo Nordisk Inc., by and through its attorneys, Debevoise & Plimpton LLP, brings this action against Defendants Eli Lilly and Company and Lilly USA, LLC (together, "Lilly"), which, on information and belief, both have a principal place of business at Lilly Corporate Center, 893 S Delaware Street, Indianapolis, Indiana 46285. In support of this action, Novo Nordisk alleges as follows:

**INTRODUCTION**

1.      This is a false advertising lawsuit against Lilly over its nationwide, direct-to-consumer ("DTC") advertising campaigns designed to mislead the public about the comparative efficacy of its GLP-1 medicines for weight loss and type 2 diabetes.  Lilly's messages to consumers are deliberately simple and deliberately false.  For weight loss, Lilly's ads falsely tell consumers in stark terms that its medicine Zepbound® helps patients lose significantly more weight than Novo Nordisk's competing medicine Wegovy®.  The misleading selling point to patients could not be any clearer:  if you want to lose weight, Lilly's Zepbound® is significantly better.  For type 2 diabetes, Lilly's Mounjaro® ads falsely tell consumers that its Mounjaro® brand reduces A1c (a key measure of blood sugar control for patients with type 2 diabetes) significantly more than Novo Nordisk's competing brand of type 2 diabetes medicine, Ozempic®.

2.      In both cases, the ads are maliciously and deceptively false because Lilly knowingly cites outdated clinical trials that compare the highest doses of the Lilly medicines to lower doses of Novo Nordisk's medicines.  Lilly clearly knows that the Food and Drug Administration ("FDA") has approved newer, more effective doses of Novo Nordisk's medicines that offer patients additional weight reduction or glycemic control.  But Lilly omits that information.  Instead, Lilly intentionally relies on outdated clinical trials to paint a false and misleading picture about the effectiveness of Novo Nordisk's medicines.  In fact, there are no head-to-head clinical trials comparing the highest doses of the respective medicines, so Lilly has no basis to make these comparative claims.

3.      These ads are not an isolated occurrence, but part of Lilly's deliberate and continuing pattern and practice across disease areas of comparing higher doses of Lilly's medicines to lower dose Novo Nordisk comparator medicines.  Lilly displays the resulting numerical difference as a brand level superiority claim, without explaining the dose comparison

limitation, and obscures the fact that Novo Nordisk's newer, highest approved doses help patients achieve materially different results.  Thereby, Lilly's strategy is to deprive consumers of their right to accurate, up-to-date, and complete information when making consequential decisions about their health.

4.  For millions of Americans, GLP-1 medicines represent a medical breakthrough. For those living with obesity, they offer significant, sustained weight loss for a chronic condition associated with cardiovascular disease and other serious health risks.  For those living with type 2 diabetes, they offer improved glycemic control that can reduce the risk of serious complications. Patients considering these medicines are making consequential decisions about their health and pay close attention to advertising about these medicines, requesting specific products with their healthcare professionals based on the comparative claims they have been exposed to and thereby influencing prescribing decisions.  Unlike healthcare professionals, who have access to the full clinical literature and are trained to evaluate trial design and dosing data, consumers often rely on advertising to form their understanding of these medicines.  That asymmetry is precisely what makes Lilly's deceptive campaign so harmful as these advertising campaigns have aired nationally across major broadcast and cable networks and through sponsored social media advertising on TikTok and Facebook, reaching millions of consumers.

5.  A primary example of Lilly's deception is a television commercial that presents Zepbound® and Wegovy® in a direct side-by-side comparison.  As shown below, the ad displays a comparison stating that patients on Zepbound® lose, on average, 50 pounds, whereas Wegovy® delivers average weight loss of 33 pounds.  The commercial's voiceover simultaneously tells consumers that "people using Lilly's Zepbound lost an average of 50 pounds compared to an average of 33 pounds with up to a 2.4 milligram dose of the Wegovy injection."  The intended

3

takeaway is as unmistakable as it is misleading:  Zepbound® is far more effective than Wegovy®. As explained below, the clinical trial Lilly relies upon did not test the highest and most effective approved dose of Wegovy® now available to patients; indeed, a separate trial of similar patients showed that this higher dose produces significantly more weight loss than the Wegovy® dose studied in the trial Lilly promotes.  In fact, that trial showed that patients on the highest approved dose of Wegovy® lost, on average, 47 pounds, results that are clinically consistent with the average weight loss demonstrated in Lilly's most methodologically rigorous trial of Zepbound®.

6.      Although Lilly acknowledges in passing the existence of a higher dose of Wegovy® in a small footnote at the bottom of its busy advertising screen, that footnote is ambiguous, confusing, virtually illegible, and wholly inadequate.  Among other flaws, it does nothing to communicate that the new, higher dose of Wegovy® is substantially more effective than the doses included in the study, and therefore the ad's message claiming dramatic superiority of Zepbound® is not supportable.  If anything, the footnote highlights the contrast between the ad's false message and the truth, and demonstrates that Lilly knows that its main advertising message is false and misleading.



7.      Lilly uses the same misleading approach in its advertisements comparing Mounjaro® to Ozempic®.  These ads focus on HbA1c (also referred to simply as A1c) reduction.  In Lilly's nationally aired television commercial, Lilly prominently tells consumers that Mounjaro® 15 mg reduced A1c by 2.3%, compared to 1.9% for Ozempic® 1 mg.  The unmistakable and misleading message is that Mounjaro® is significantly superior to Ozempic® for glycemic control.  But that message also is false because Lilly prominently promotes a comparison of Mounjaro® 15 mg, the highest and most effective dose of Mounjaro®, to Ozempic® 1 mg, a lower dose of Novo Nordisk's medicine.  As Lilly well knows, the highest and most effective dose of Ozempic® is the 2 mg dose, which was approved by the FDA more than four years ago, and has been clinically demonstrated to provide greater A1c reduction than the 1 mg dose.  Once again, Lilly tries to address this fatal flaw in its advertising with a tiny footnote that discloses the existence of Ozempic® 2 mg, but that footnote also is ambiguous, virtually invisible, and fundamentally deficient; among other flaws, it does not clearly explain that Ozempic® 2 mg is more effective at lowering A1c than the results Lilly touts in large letters and in the voiceover of its commercial.



8.    In the cases of both Zepbound® and Mounjaro®, the trials Lilly relies upon were designed and conducted years ago and are outdated.  Although they compared the highest maintenance doses of Zepbound® and Mounjaro® to the highest maintenance doses of Wegovy® and Ozempic® that were approved at that time, they no longer reflect the current state of science. Since those trials were conducted, the FDA approved new, more effective doses for Ozempic® (in March 2022) and Wegovy® (in March 2026).  Lilly's advertising ignores these facts.  As the FDA-approved labeling for these new doses confirms, both Wegovy® 7.2 mg and Ozempic® 2 mg demonstrated significantly greater efficacy than the lower doses Lilly features in its advertising.  Instead of testing its medicines against these new, more effective doses of Novo Nordisk's medicines—which would be the most appropriate basis for making comparative claims—Lilly continues to present outdated comparisons in its advertising as though they reflect the treatment options available today.  It is inherently and necessarily misleading and deceptive to compare the highest and most effective available doses of Lilly's medicines to lower, less effective doses of Novo Nordisk's medicines, all while ignoring the existence of the higher, more effective doses of Novo Nordisk's medicines.

9.    Lilly knows that its comparisons are deceptive.  And Lilly knows that, particularly in the GLP-1 pharmaceutical space where research is ongoing and the state of the science is constantly evolving, the most accurate and current understanding of the benefits of medicines can change overnight.  After the FDA approved the highest and most effective available dose of Wegovy®, and after Novo Nordisk wrote to Lilly to demand that Lilly cease running its misleading comparison, Lilly added a small, ineffectual disclaimer to its Zepbound® ads stating that the trial did not include "Wegovy 7.2 mg."  But inherently flawed disclaimers, buried in text at the bottom of a busy screen, cannot transform an advertisement's dominant false or misleading

message into a truthful one; moreover, Lilly's ambiguous, inadequate, and confusing disclaimer fails to correct the ad's overarching message that Zepbound® helps patients achieve significantly more weight loss than Wegovy®. It also does nothing to disclose that the highest and most effective dose of Wegovy® has demonstrated significantly more weight loss than the results displayed in Lilly's misleading comparison. Lilly's Mounjaro® advertisements suffer from the same defect.

10. Lilly's false and misleading advertising is causing irreparable harm to Novo Nordisk and to the patients Lilly deceives. Wegovy® and Zepbound® are leading injectable GLP-1 medicines for obesity and weight reduction and management; Ozempic® and Mounjaro® are leading injectable GLP-1 medicines for type 2 diabetes. These medicines compete directly for patients, healthcare-professional attention, and prescriptions in multi-billion-dollar markets. Patients deciding which treatment to discuss with, or request from, their healthcare professionals are highly likely to be influenced by Lilly's stale and inaccurate claims of dramatic superiority, which are based on misleading comparisons that do not reflect both brands' highest FDA-approved doses available today.

11. Patients considering GLP-1 treatment for weight reduction and management or type 2 diabetes are making consequential decisions about their health. Lilly's advertising campaign deprives consumers of the truthful, current, and complete information they need to make informed decisions about their available treatment options. By falsely convincing consumers that Zepbound® offers dramatically greater weight loss than Wegovy®, Lilly's advertising also distracts attention from the fact that Novo Nordisk's Wegovy® carries FDA-approved indications for cardiovascular risk reduction and metabolic dysfunction-associated steatohepatitis (MASH) in appropriate patients, while Ozempic® has FDA-approved indications for cardiovascular risk

reduction and kidney protection in appropriate patients.  These are indications that Lilly's medicines do not offer, with benefits that would weigh heavily in a patient's treatment decision if Lilly's weight loss figures accurately reflected the medicines available to patients today.

12.    In addition to depriving patients of the truthful, current, and complete information they need to make informed decisions about their available treatment options, the campaigns divert patient demand and prescriptions from Wegovy® to Zepbound® and from Ozempic® to Mounjaro®, and damage Novo Nordisk's goodwill and reputation.  These harms are compounded by the scale and reach of Lilly's campaign.  Since the revised Zepbound® television commercial began airing on or about April 27, 2026, it has received more than 700 million impressions.  Lilly's advertising expanded beyond nationally televised advertisements to content on Lilly's consumer-facing websites and sponsored social media advertising.  The breadth of Lilly's advertising campaign means that its false superiority messages are reaching a large, ever-growing audience of prospective patients, and the competitive harm to Novo Nordisk is amplified with each day Lilly's false and misleading advertising continues to run.

13.    Novo Nordisk therefore seeks preliminary and permanent injunctive relief barring Lilly from continuing to disseminate the challenged comparative advertising for Zepbound® and Mounjaro®, or any materially similar advertising (such as its companion online advertisements), based on trials that did not test the highest approved doses of Wegovy® and Ozempic® and do not support the claimed superiority.  Novo Nordisk also seeks damages and all other relief available under the Lanham Act and state unfair-competition law, including corrective advertising to inform consumers that Lilly's Zepbound® and Mounjaro® advertisements based on outdated clinical trials conveyed a deceptive comparison of the current efficacy of Novo Nordisk's medicines.

**THE PARTIES**

14.    Plaintiff Novo Nordisk Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 800 Scudders Mill Road, Plainsboro, NJ 08536.  Novo Nordisk Inc. promotes, offers, and sells Wegovy® and Ozempic® branded medicines throughout the United States (including not only the injectable medicines compared in Lilly's advertisements, but also Ozempic® tablets and Wegovy® tablets, the latter of which are the leading GLP-1 tablets in the United States that are approved by the FDA for weight loss).

15.    On information and belief, Defendant Eli Lilly and Company is a corporation organized and existing under the laws of the State of Indiana with its principal place of business at Lilly Corporate Center, 893 S Delaware Street, Indianapolis, Indiana 46285.  Eli Lilly and Company is an international medicine company that developed the medication tirzepatide, which is sold under the brand names Zepbound® and Mounjaro®.

16.    On information and belief, Defendant Lilly USA, LLC is a corporation organized and existing under the laws of the State of Indiana with its principal place of business at Lilly Corporate Center, 893 S Delaware Street, Indianapolis, Indiana 46285.  Lilly USA, LLC is a subsidiary of Eli Lilly and Company that markets, sells, and distributes Zepbound® and Mounjaro® injectable medicines in the United States.  Unlike Wegovy® and Ozempic®, Zepbound® and Mounjaro® do not come in a tablet format or any other non-injectable format.

**JURISDICTION AND VENUE**

17.    This Court has original jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338.  This Court has supplemental jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1367(a).

18.     This Court has personal jurisdiction over Defendants because they have transacted business in the State of New Jersey, including by advertising and selling pharmaceutical products such as Zepbound® and Mounjaro® in the state.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants are subject to personal jurisdiction in this District and a substantial part of the events giving rise to this action occurred in this District, including (i) the distribution of Lilly's misleading advertising and (ii) the harm to Novo Nordisk at its principal place of business in this District.

## FACTUAL BACKGROUND

### THE GLP-1 INDUSTRY

20.     Glucagon-like peptide-1 receptor agonists, commonly referred to as "GLP-1s," are prescription medicines used to treat serious chronic conditions, including type 2 diabetes and obesity.  GLP-1s mimic a naturally occurring hormone that helps regulate blood sugar, appetite, and food intake.  Among other effects, GLP-1s stimulate insulin release, suppress glucagon secretion, slow gastric emptying, and promote a feeling of fullness, thereby reducing appetite and contributing to weight loss.

21.     GLP-1s have become one of the most important classes of medicines for the treatment of type 2 diabetes and obesity.  For patients with type 2 diabetes, GLP-1 medicines can reduce A1c improving glycemic control.  A1c is a commonly used measure of a patient's average blood sugar levels over approximately the prior three months, expressed as a percentage.  A1c reduction is clinically important because sustained high blood sugar is associated with serious complications of diabetes, including cardiovascular disease, kidney disease, nerve damage, and vision loss. Reducing A1c is therefore a central goal of type 2 diabetes management and a primary

consideration for patients and healthcare professionals evaluating treatment options. Approximately 600 million people worldwide are living with diabetes.

22.    For patients with obesity, GLP-1 medicines also offer an important treatment option when used together with diet, exercise, and medical supervision.  Obesity is a chronic disease associated with serious health risks, including cardiovascular disease, type 2 diabetes, sleep apnea, and other weight-related complications.  Approximately 100 million people in the United States and 900 million people worldwide meet the clinical criteria for obesity.

23.    The public attention surrounding GLP-1s reflects their medical importance.  These medicines have become among the most widely known and discussed prescription medicines in the United States, and demand has grown rapidly as patients seek treatment options for type 2 diabetes, obesity, and weight-related conditions.  That growth is expected to continue.  Novo Nordisk reported approximately $12.5 billion in sales of obesity care medicines in 2025, reflecting the already substantial commercial scale of medicines indicated for weight reduction and management.  Industry projections estimate that more than 30 million Americans may be using a GLP-1 treatment by 2030 and that the global demand for GLP-1s could reach $190 billion by 2035.  As use expands, competition among GLP-1 manufacturers has intensified, especially in the market for medicines indicated for weight reduction and management.

<u>NOVO NORDISK, WEGOVY®, AND OZEMPIC®</u>

24.    Novo Nordisk has been a leader in the GLP-1 space since 2010 when liraglutide (sold by Novo Nordisk under the brand name Victoza®) became the first GLP-1 approved by the FDA to treat type 2 diabetes.  In 2014, liraglutide (sold by Novo Nordisk under the brand name Saxenda®) was the first GLP-1 approved by the FDA to treat weight reduction and management in adults.

25.    Novo Nordisk has continued to innovate since the 2014 approval of Saxenda®, including with semaglutide medicines:  first, Ozempic®, which the FDA approved for type 2 diabetes in 2017, and then Wegovy®, which the FDA approved in injectable form for weight loss in 2021 and in oral tablet form in 2025.  Semaglutide is the only GLP-1 with FDA-approved indications broadly spanning obesity, type 2 diabetes, chronic kidney disease, cardiovascular risk reduction, and metabolic dysfunction-associated steatohepatitis (MASH).  Lilly's GLP-1 medications do not have that breadth of indications, and Novo Nordisk is the only pharmaceutical company with FDA-approved medicines containing semaglutide.  The FDA has not approved any generic versions of semaglutide GLP-1 medicines.

***Wegovy®***

26.    Wegovy® is indicated, in combination with a reduced-calorie diet and increased physical activity, to reduce excess body weight and maintain weight reduction long term in (a) adults and pediatric patients aged 12 years and older with obesity, and (b) adults with overweight and at least one weight-related comorbid condition (such as obstructive sleep apnea, cardiovascular disease, or high blood pressure).  Along with diet and exercise, Wegovy® is also indicated to reduce the risk of major adverse cardiovascular events in adults with established cardiovascular disease and either obesity or overweight, and for the treatment of noncirrhotic metabolic dysfunction associated steatohepatitis (MASH), with moderate to advanced liver fibrosis (consistent with stages F2 to F3 fibrosis) in adults.  These approved uses reflect Wegovy®'s broad clinical profile in the GLP-1 class.  Lilly's Zepbound® is not indicated for cardiovascular or MASH conditions.

27.    For years, Wegovy® was approved as a once-weekly subcutaneous injection (that is, the medicine is injected just under the skin from which it is absorbed slowly into the blood

stream and body) in doses of 0.25 mg, 0.5 mg, 1 mg, 1.7 mg, and 2.4 mg. Patients initiate treatment at the lowest dose and increase the dose over time, under direction from their healthcare professional, based on the approved dosing schedule. Patients are advised to follow the dose escalation schedule to minimize gastrointestinal adverse reactions. Once a patient has completed the dose escalation, the patient continues to use a "maintenance dose," which is the dose prescribed for ongoing, long-term treatment. Before March 2026, the 2.4 mg dose was the highest recommended maintenance dose of Wegovy®.

28.     One of Novo Nordisk's latest innovations in the Wegovy® family is the introduction of a higher injectable dose that is even more effective for weight loss. In March 2026, the FDA approved Wegovy® as a once-weekly 7.2 mg injection, which is now the highest and most effective approved dose of Wegovy®. Wegovy® 7.2 mg is intended for patients who have tolerated Wegovy® 2.4 mg and are clinically indicated for additional weight reduction. The FDA's approval of Wegovy® 7.2 mg was supported by clinical data demonstrating that the higher dose resulted in additional average weight reduction compared to previously approved doses, with a safety profile consistent with the known side effects of semaglutide. The approval of Wegovy® 7.2 mg changed the comparative landscape because Wegovy® 2.4 mg is no longer the most effective dose of Wegovy® for weight reduction.

29.     The FDA's approval of Wegovy® 7.2 mg was based primarily on Novo Nordisk's STEP UP clinical trial, which evaluated the efficacy and safety of Wegovy® 7.2 mg compared to Wegovy® 2.4 mg and placebo. The STEP UP trial showed that Wegovy® 7.2 mg delivered greater weight loss than Wegovy® 2.4 mg. In the trial, participants with obesity experienced average weight loss of 18.8% (an average of 47 pounds), and approximately one in three participants achieved a 25% average weight loss (about 62 pounds from baseline body weight).

30.    The STEP UP trial was a double-blind, randomized, placebo-controlled trial, which is recognized as the gold standard for clinical trials to evaluate the effectiveness of a medication. In a double-blind trial, neither the participants nor the trial investigators administering or monitoring the treatment know which medicine each participant has been assigned to receive. Masking the identity of the medicine being tested is ideal because it prevents the knowledge of which treatment a patient is receiving from influencing the outcome of the trial.  For example, participants who know they have been assigned to a medicine they believe is more effective may adhere more rigorously to dietary restrictions or physical activity regimens, or report appetite and well-being differently, in ways that could affect the reported outcomes.  Similarly, knowledge of which medicine a patient is on might affect the investigators, who may react differently to reported adverse effects or the need for patient counseling.

### *Ozempic®*

31.    Novo Nordisk has also continued to innovate in the Ozempic® family for patients with type 2 diabetes.  Ozempic® is a leading once-weekly injectable GLP-1 medicine indicated to improve glycemic control in adults with type 2 diabetes.[1]  In addition to its lower approved doses, Novo Nordisk obtained FDA approval in 2022 for Ozempic® 2 mg, a higher maintenance dose for adults with type 2 diabetes who may need additional glycemic control.  That approval was based on Novo Nordisk's SUSTAIN FORTE trial, a double-blind, parallel-group, placebo-controlled trial that found that participants receiving Ozempic® 2 mg achieved an average A1c reduction of 2.1%.  By comparison, patients treated with the 1 mg dose of injectable Ozempic®

---

[1] As of May 2026, Ozempic® is now also available in tablet form.  Previously, Novo Nordisk's oral semaglutide for the treatment of type 2 diabetes was marketed under the brand name Rybelsus® (after receiving FDA approval in 2019).  In May 2026, Novo Nordisk re-branded Rybelsus® as "Ozempic® pill."

achieved an average A1c reduction of 1.9%. Thus, Ozempic® 2 mg was proven to provide greater A1c reduction than the 1 mg dose of injectable Ozempic®.

32.    In addition to lowering A1c, Ozempic® has been shown to significantly lower the risk of major adverse cardiovascular events, such as heart attacks and strokes, in adults with type 2 diabetes mellitus and established cardiovascular disease, as well as reduce the risk of sustained eGFR decline (a measure of the rate at which kidneys filter blood), end-stage kidney disease, and cardiovascular death in adults with type 2 diabetes mellitus and chronic kidney disease. These are important indications that are unique to Ozempic®; Mounjaro® has not been approved for these indications.

### Commercial Success of Wegovy® and Ozempic®

33.    Wegovy® and Ozempic® are among Novo Nordisk's most important medicines and leading treatments in their respective markets:  Wegovy® for weight reduction and management and Ozempic® for type 2 diabetes. Novo Nordisk has invested decades of research and billions of dollars in developing GLP-1 medicines, including Wegovy® and Ozempic®, and has built substantial goodwill in these brands through scientific innovation, clinical efficacy, and physician and patient education.

34.    Wegovy® has achieved substantial commercial success. In the four years following the launch of Wegovy® in 2021, Novo Nordisk's total net sales of GLP-1 medicines indicated to treat obesity increased from approximately $1.3 billion annually to approximately $12.6 billion annually.[2]

---

[2] Novo Nordisk A/S, *Annual Report 2021*, 57 (Feb. 2022), https://www.novonordisk.com/content/dam/nncorp/global/en/investors/irmaterial/annual_report/2022/novo-nordisk-annual-report-2021.pdf; Novo Nordisk A/S, *Annual Report 2025*, 90 (Feb. 2026),

35.    Novo Nordisk is a global market leader in the GLP-1 segment for type 2 diabetes, with a value market share of approximately 55% in 2024, driven primarily by Ozempic® prescriptions.  In 2025, sales of Ozempic® reached approximately $19.4 billion.

<u>LILLY, ZEPBOUND®, AND MOUNJARO®</u>

36.    Lilly is a global pharmaceutical company and one of Novo Nordisk's principal competitors in the market for GLP-1 medicines indicated for type 2 diabetes and weight reduction and management.

37.    Mounjaro® and Zepbound® are Lilly's tirzepatide medicines.  Tirzepatide is a dual glucose-dependent insulinotropic polypeptide (GIP) and GLP-1 receptor agonist.  Like semaglutide, the active ingredient in Novo Nordisk's Ozempic® and Wegovy®, tirzepatide helps improve blood sugar control, reduce appetite, and support weight reduction.

38.    The FDA approved Mounjaro® in 2022 for adults with type 2 diabetes.  Mounjaro® is formulated as a once-weekly subcutaneous injection and is offered in several doses:  2.5 mg, 5 mg, 7.5 mg, 10 mg, 12.5 mg, and 15 mg.  Mounjaro®'s prescribing information recommends that patients begin treatment at 2.5 mg and increase the dose over time based on treatment response and tolerability.  The recommended maintenance doses for glycemic control are 5 mg, 10 mg, and 15 mg.

39.    The FDA approved Zepbound® in 2023 for weight reduction and management.  Zepbound® is also formulated as a once-weekly subcutaneous injection and is offered in the same dose strengths as Mounjaro®:  2.5 mg, 5 mg, 7.5 mg, 10 mg, 12.5 mg, and 15 mg.  The range of approved doses for Zepbound® has not changed since its introduction in 2023.  Zepbound®'s prescribing information recommends that patients begin treatment at 2.5 mg and increase the dose

https://www.novonordisk.com/content/dam/nncorp/global/en/investors/irmaterial/annual_report/2026/novo-nordisk-annual-report-2025.pdf.

over time based on treatment response and tolerability.  The recommended maintenance doses for weight reduction are 5 mg, 10 mg, and 15 mg.

40.    Mounjaro® is indicated, as an adjunct to diet and exercise, to improve glycemic control in adults with type 2 diabetes.  Zepbound® is indicated, in combination with a reduced-calorie diet and increased physical activity, to reduce excess body weight and maintain weight reduction in (a) adults with obesity or (b) adults with overweight and at least one weight-related comorbid condition.  Zepbound® is also indicated to treat moderate to severe obstructive sleep apnea in adults with obesity.

41.    Ozempic® and Mounjaro® compete directly in the market for GLP-1 medicines indicated to treat type 2 diabetes, while Wegovy® and Zepbound® compete directly in the market for GLP-1 medicines indicated for obesity and weight reduction and management.  Claims comparing these medicines' efficacy are therefore highly material to consumers and competition in the market.

<u>OBESITY AND LILLY'S SURMOUNT-5 TRIAL</u>

42.    In 2023–2024, Lilly sponsored a clinical trial known as SURMOUNT-5, the results of which were published in May 2025.  The stated purpose of SURMOUNT-5 was to evaluate the safety and efficacy of Zepbound® as compared to Wegovy® in adults living with obesity, or adults with overweight and at least one weight-related complication but without diabetes.

43.    As noted above, when designing clinical trials for evaluating the safety and efficacy of pharmaceutical medicines, the gold standard is a double-blind trial, in which neither the researchers nor the patients know which medicine has been administered.  When medicines have different delivery systems, it can be more challenging to design a fully double-blind trial, though it is not impossible.  Trials that are not double-blind may still provide relevant data, but their results must be interpreted with caution because the absence of blinding can introduce bias and

17

make the findings less reliable and less certain.  These are limitations that the audience reviewing the results needs to understand in order to weigh them appropriately.

44.     SURMOUNT-5 did not follow the double-blind methodology.  Instead, it was an open-label trial, meaning that participants and trial investigators all knew which medication each participant was receiving, including because the medicines have different delivery systems.  In an open-label trial, participants' expectations about a medicine's efficacy can influence subjective outcomes such as appetite, dietary adherence, and self-reported well-being, all of which can affect weight-loss results, and trial investigators' awareness of treatment assignment can similarly influence clinical assessments, patient counseling, and the management of adverse events.  The FDA has recognized these concerns and criticized the use of open-label trials to support comparative superiority claims, noting that the "open-label nature" of a comparative trial "introduces bias and reduces the internal validity of the trial results."[3]  These limitations are especially significant, and especially deceptive, in the DTC context.  Unlike healthcare professionals, who are trained to evaluate clinical trial design and may be independently aware of the latest approved dosing options for these medicines, ordinary consumers have no basis for assessing how an open-label design affects the reliability of comparative results.  Although Lilly acknowledges in its Wegovy® (but not its Mounjaro®) advertising that the study was "less rigorous" and the findings "less certain," it does nothing to explain what those concessions mean or why consumers should view the advertised comparison with caution.

45.     SURMOUNT-5 evaluated Zepbound® 10 mg and 15 mg against Wegovy® 1.7 mg and 2.4 mg.  At the time the trial was conducted in 2023 and 2024, those were the two highest

---

[3] Letter from FDA to Nikki Hill, PharmD, Head of Regulatory Affairs, U.S. Advertising and Promotion, AbbVie, Inc. (Sept. 9, 2025), https://www.fda.gov/media/188908/download.

recommended maintenance doses of the medicines being compared, although other maintenance doses of Zepbound® were available, including the 5 mg dose.

46. The trial reported that participants treated with Zepbound® 10 mg or 15 mg achieved an average weight reduction of 20.2%, compared to 13.7% for participants treated with Wegovy® 1.7 mg or 2.4 mg. Expressed in pounds, the trial reported average weight loss of 50.3 pounds for participants treated with Zepbound® and 33.1 pounds for participants treated with Wegovy®.

47. SURMOUNT-5 did not test Wegovy® 7.2 mg because that higher and more effective dose had not yet been approved by the FDA when the trial was conducted. After the FDA approved Wegovy® 7.2 mg in March 2026, SURMOUNT-5 became outdated and no longer reflected a fair comparison of the medicines because the trial did not compare the highest and most effective FDA-approved maintenance dose of the medicines at issue. Rather, SURMOUNT-5 compared Zepbound®'s **two highest maintenance doses of 10 mg and 15 mg** to the **two lowest maintenance doses of Wegovy®** that are currently available. That is an inherently misleading comparison.

48. In 2022, Lilly sponsored SURMOUNT-1, a double-blind, randomized, placebo-controlled trial that evaluated tirzepatide, the active ingredient in Zepbound®, for the treatment of obesity. SURMOUNT-1 evaluated adults with obesity or overweight with a weight-related comorbidity but without diabetes who took tirzepatide at doses of 5 mg, 10 mg, and 15 mg, or placebo, over 72 weeks. Unlike SURMOUNT-5, SURMOUNT-1 followed the gold standard double-blind methodology, meaning that neither the participants nor the trial investigators knew which treatment each participant received. In the trial, participants receiving the 5 mg dose achieved average weight loss of 15.0%, while participants receiving the 10 mg and 15 mg doses

achieved average weight loss of 19.5% and 20.9%, respectively, compared with 3.1% for placebo. SURMOUNT-5, by contrast, did not include the 5 mg maintenance dose in the tirzepatide arm it studied; instead, it included only participants receiving a maximum tolerated dose of 10 mg or 15 mg, and participants who could not tolerate those doses discontinued the trial intervention.

49. Novo Nordisk's STEP UP trial, which supported the FDA's March 2026 approval of Wegovy® 7.2 mg, tested the efficacy of the highest and most effective dose of Wegovy®. As noted above, STEP UP, like SURMOUNT-1, was a double-blind, randomized, placebo-controlled trial. It evaluated adults with obesity without diabetes who took Wegovy® 7.2 mg against Wegovy® 2.4 mg and a placebo over 72 weeks, and showed that participants receiving Wegovy® 7.2 mg achieved average weight loss of 18.8%, or approximately 47 pounds.

50. If Lilly wanted to make comparative claims about Zepbound® and Wegovy®, the most appropriate way for it to do so would be to commission a clinical trial comparing the effectiveness of the highest currently approved maintenance doses of Zepbound® to the highest currently approved maintenance doses of Wegovy®. Although Lilly obviously has the resources to conduct such a trial, it has not bothered to do so. Instead, it has elected to continue to advertise the results of a trial it knows is outdated. And this is particularly misleading given that directional evidence already exists on the relative effectiveness of these two medicines, when taken at their highest and most effective doses. SURMOUNT-1 and STEP UP are the most methodologically rigorous trials available for each medicine's highest approved maintenance dose. Both followed double-blind, placebo-controlled designs; both measured percentage weight reduction from baseline over the same 72-week treatment period; and both produced clinically consistent results: 20.9% weight loss, or approximately 48 pounds, for Zepbound® 15 mg in SURMOUNT-1, and 18.8%, or approximately 47 pounds, for Wegovy® 7.2 mg in STEP UP.

20

<u>TYPE 2 DIABETES AND LILLY'S SURPASS-2 TRIAL</u>

51.    In 2021, Lilly published the results of a clinical trial known as SURPASS-2.  The stated purpose of SURPASS-2 was to evaluate the safety and efficacy of tirzepatide, the active ingredient in Mounjaro®, as compared to injectable semaglutide, the active ingredient in Ozempic®, in adults with type 2 diabetes whose blood sugar was inadequately controlled with metformin alone (another medication indicated for the treatment of type 2 diabetes).

52.    SURPASS-2 was a 40-week, randomized, Phase 3 trial.  The trial evaluated three doses of tirzepatide, 5 mg, 10 mg, and 15 mg, against one dose of semaglutide, 1 mg.  Like SURMOUNT-5, SURPASS-2 was an open-label trial, and participants and trial investigators knew whether participants were receiving tirzepatide or semaglutide.

53.    SURPASS-2 reported greater reductions in A1c for participants treated with tirzepatide than for participants treated with semaglutide 1 mg (which was the highest approved dose of Ozempic® at the time of that trial).  In SURPASS-2, participants treated with Mounjaro® 5 mg, 10 mg, or 15 mg achieved average A1c reductions of 2.0%, 2.2%, and 2.3%, respectively, compared to 1.9% for participants treated with Ozempic® 1 mg.

54.    But SURPASS-2 did not compare tirzepatide to semaglutide 2 mg, which is now the highest and most effective approved maintenance dose of Ozempic®.  Instead, SURPASS-2 compared all three maintenance doses of tirzepatide—including the highest approved dose of Mounjaro®—against semaglutide 1 mg only.  For that reason, SURPASS-2 does not provide a fair, complete, or balanced comparison of the two medicines at their currently highest approved maintenance doses.  Although it has been more than four years since the FDA approved Ozempic® 2 mg, Novo Nordisk is not aware of any effort Lilly has made to conduct a randomized, controlled trial comparing the efficacy of Mounjaro® to the efficacy of Ozempic®

21

at its highest and most effective dose.  Lilly's decision not to conduct that test speaks volumes. At the minimum, it means that Lilly lacks any basis for making any comparative claims between the highest and most effective doses of the parties' respective type 2 diabetes GLP-1s.

<u>LILLY'S COMPARATIVE ADVERTISING FOR ZEPBOUND®</u>

55.    As noted above, Lilly is running a national comparative advertising campaign that expressly cites the results of SURMOUNT-5 and makes comparative claims about the efficacy of Zepbound® and Wegovy®.

56.    Lilly's advertising campaign includes television commercials.  Before Wegovy® 7.2 mg was approved, Lilly's television commercial included the following claims and disclaimer (as shown, in part, in the screen capture reproduced below):

- **Voiceover claim:**  "In a study, people using Zepbound lost an average of 50 pounds compared to an average of 33 pounds with the Wegovy injection."

- **Written claim:**

*LILLY'S*

*ZEPBOUND*®

*(tirzepatide)*MTD

*50*LBS

*20.2% WEIGHT LOSS*

*NOVO NORDISK'S*

*WEGOVY*®

*(semaglutide)*MTD

*33*LBS

*13.7% WEIGHT LOSS*"

- **Written disclaimer:**
  "**Data collected in a less-rigorous study.  Findings less certain.  Factors beyond medications may have contributed to weight loss.**  In a study of adults without diabetes with diet & exercise, average weight loss: Zepbound MTD (maximum tolerated dose, 10 mg or 15 mg): **20.2% (50 lbs)**.  Wegovy injection MTD (1.7 mg or 2.4 mg): **13.7% (33 lbs)**.  Avg baseline weight: **248.4 lbs** (Zepbound MTD). 250 lbs (Wegovy MTD)."



57.     In March 2026, the FDA approved Wegovy® 7.2 mg.  After that approval, Lilly's continued use of SURMOUNT-5 no longer presented an up-to-date comparison of the maintenance doses of the Wegovy® injection and the highest approved maintenance doses of the Zepbound® injection.  That is because SURMOUNT-5 did not test Wegovy® 7.2 mg and therefore did not measure the average weight loss achieved by trial participants on the highest FDA-approved Wegovy® maintenance dose now available to patients clinically indicated for additional weight reduction.

58.     When market realities change, an advertiser must ensure that its advertising reflects those new market realities to avoid liability for disseminating claims that have become non-truthful, misleading, or deceptive.[4]  Lilly, which no doubt was fully aware of the FDA approval

---

[4] Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) prohibits false or misleading advertising that results in the material deception of consumers.  An advertisement violates the Lanham Act if it is literally false or likely to mislead consumers given the merchandising context. *Church & Dwight Co. v. S.C. Johnson & Son, Inc.*, 873 F. Supp. 893, 903 (D.N.J. 1994).

of Wegovy® 7.2 mg, did nothing to modify its advertising to reflect that significant new fact. Accordingly, on April 22, 2026, Novo Nordisk wrote to Lilly objecting to Lilly's continued use of the television commercial in light of the FDA's approval of Wegovy® 7.2 mg. Novo Nordisk explained that Wegovy® had been shown in the STEP UP trial to provide greater weight loss than Wegovy® 2.4 mg, and that Lilly's continued reliance on SURMOUNT-5 misleads consumers about the comparative efficacy of Wegovy® and Zepbound®.

59.    Novo Nordisk requested that Lilly suspend the challenged advertising and refrain from making future consumer-directed comparative claims based on SURMOUNT-5. Despite Novo Nordisk's request that Lilly provide a written response to its letter within 10 business days (by May 6, 2026), Lilly did not respond. In fact, as of the date of this complaint, Lilly has still not responded to Novo Nordisk's letter.

60.    What Lilly did do, however, was slightly and inadequately modify its television commercial to include additional language in the voiceover, written claim, and disclaimer (the revisions are shown in underlined text below). As explained below, these minor tweaks do nothing to effectively correct the deceptive and false messages communicated by the ad.

- **Voiceover claim:** "In a study, people using <u>Lilly's</u> Zepbound lost an average of 50 pounds compared to an average of 33 pounds with <u>up to a 2.4 mg dose of</u> the Wegovy injection."

- **Written claim:**
  "<u>IN A STUDY COMPARING ZEPBOUND 10 MG AND 15 MG WITH WEGOVY INJECTION 1.7 MG and 2.4 MG</u>

  | *LILLY'S* | *NOVO NORDISK'S* |
  |---|---|
  | *ZEPBOUND*® | *WEGOVY*® |
  | *(tirzepatide)* <u>*10 mg and 15 mg*</u> | *(semaglutide)* <u>*1/7 mg and 2.4 mg*</u> |
  | *50*LBS | *33*LBS |
  | *20.2% WEIGHT LOSS* | *13.7% WEIGHT LOSS*" |

- **Written disclaimer:**
  "**Wegovy 7.2 mg was not evaluated in this study.  It has since been approved.  Data collected in a less-rigorous study.  Findings less certain.  Factors beyond medications may have contributed to weight loss.**  In a study of adults without diabetes with diet & exercise, average baseline weight: **248.4 lbs** (Zepbound).  **250 lbs** (Wegovy)."



61.    Lilly also made similar revisions to the comparative claims on its consumer-facing Zepbound® website, which now states:

- **Written claim with graph:**  "See how Zepbound 10 mg and 15 mg compared to Wegovy® (semaglutide) injection 1.7 mg and 2.4 mg¶**"

  Zepbound 10 mg and 15 mg -50 lbs (20.2%) Average weight loss
  Wegovy 1.7 mg and 2.4 mg -33 lbs (13.7%) Average weight loss

- **"Image Description" drop down text that only appears if viewer affirmatively expands the text:**  "People who took Zepbound 10 mg and 15 mg on average lost 50 lbs (20.2% weight loss) compared to people who took Wegovy 1.7 mg and 2.4 mg and on average lost 33 lbs (13.7% weight loss)."

- **Written disclaimers:**

  o  "Wegovy 7.2 mg was not evaluated in this study.  It has since been approved."

25

- o "Data collected in a less rigorous study so findings are less certain. Factors beyond studied medications may have contributed to weight loss.  Individual results may vary."

- o "¶ Along with diet and exercise."

- o "** In 72-week study of adults without diabetes with obesity or overweight and weight-related medical problems, participants on Zepbound MTD (the maximum dose a participant could tolerate, 10 mg or 15 mg) experienced on average a 20.2% (50 lbs) weight loss compared to an average of 13.7% (33 lbs) weight loss for participants on Wegovy MTD (1.7 mg or 2.4 mg, at the time of the study 2.4 mg was the highest approved dose).  Average starting weights were 248.4 lbs for Zepbound and 250 Ibs for Wegovy."

- o "MTD=maximum tolerated dose."



62.    The revisions to the television commercial and to the website are plainly ineffective.  The disclaimers merely tell consumers that Wegovy® 7.2 mg was not tested and is

now available, but fail to disclose the material fact about that dose—that it has been shown to be more effective than the doses included in the study, and that patients on Wegovy® 7.2 mg have, on average, lost a clinically consistent amount of weight as patients taking Zepbound®.  In contrast, the dominant message—50 pounds versus 33 pounds—is displayed in bold text and reinforced by voiceover.  Even if a consumer were to notice the disclaimer, they nevertheless would be left with the same false and misleading impression:  that Zepbound® is dramatically more effective than Wegovy®.  Nor would more informative or prominently displayed disclaimers cure the problem.  No disclaimer can neutralize a boldly presented, false 50-to-33-pound comparison when double-blinded clinical trials of the parties' highest approved doses have demonstrated that the two medicines help patients lose clinically consistent amounts of weight.

63.    Lilly's comparative advertising is not limited to television and its consumer-facing website.  Lilly has also disseminated the same comparative Zepbound® claims through sponsored social media advertising, including on TikTok and Facebook.  On information and belief, the ad that launched on TikTok and Facebook in June 2026 repeats the same central comparison challenged here:  that, in a study, participants taking Zepbound® 10 mg and 15 mg lost 50 pounds on average, compared to 33 pounds for participants taking Wegovy® 1.7 mg and 2.4 mg.  The advertisement describes the comparison as a "head-to-head study" and, immediately after presenting the comparison, states:  "Those are just the facts."  Although the TikTok advertisement includes small-print disclosure language stating that Wegovy® 7.2 mg was not evaluated in the study and has since been approved, those disclosures are wholly inadequate and do not cure the misleading net impression.  To the contrary, the "just the facts" language falsely signals that Lilly's selective comparison is complete, objective, and not subject to meaningful qualification,

when in fact it omits the material "facts" that the highest dose of Wegovy® has been shown to provide clinically consistent weight loss.



64.     On information and belief, Lilly has not conducted any clinical trial evaluating the efficacy of the highest dose of Wegovy®.  But Lilly is certainly aware of Novo Nordisk's STEP UP trial and results, which were published in November 2025 and provided the key evidence supporting the FDA's March 2026 approval of Wegovy® 7.2 mg.  Lilly therefore is aware that the STEP UP trial demonstrated approximately 47 pounds of weight loss (18.8% average weight loss) for participants receiving the highest dose of Wegovy®, which is clinically consistent to the 48 pounds of weight loss (20.9% average weight loss) for participants receiving Zepbound® 15 mg in the SURMOUNT-1 trial.  In other words, these trials report clinically consistent weight

loss results for the highest and most effective maintenance doses of the two medicines.  The small differences among them would not be considered clinically meaningful.  The failure to clearly and prominently disclose these "facts" is especially deceptive given that there are other advantages of Wegovy®—including additional indications for addressing serious diseases—that Zepbound® does not have, and that may be more important in the selection between the two medicines once consumers understand that there is no meaningful difference in their efficacy for weight loss.

65.    A comparison of these results is particularly informative because of the methodological parallels between SURMOUNT-1 and STEP UP and because both produced results showing that the highest doses of the respective medicines achieve clinically consistent weight loss:  48 pounds (20.9%) of average weight loss for Zepbound® 15 mg in SURMOUNT-1 and 47 pounds (18.8%) of average weight loss for Wegovy® 7.2 mg in STEP UP.  The consistency of these results across two methodologically rigorous, independently conducted trials undermines the dramatic superiority Lilly advertises.

66.    SURMOUNT-5 also has other limitations that makes this DTC advertising campaign even more egregious.  SURMOUNT-5 was an open-label trial that Lilly actually concedes in its disclaimers was "less rigorous" and resulted in "findings that are less certain." Given that consumers lack the expertise to evaluate the biases inherent in open-label trials, and why the reported comparative results of SURMOUNT-5 are less reliable and less certain than if the trial had followed the gold standard double-blind protocol, Lilly's inadequate disclaimer does nothing to help a lay consumer understand those limitations.  A consumer watching Lilly's television commercial sees the bold "50 pounds versus 33 pounds" comparison and takes it at face value.  That has a material effect in influencing prescribing decisions, as that consumer then

brings that false impression into a discussion with their healthcare professional, requesting Lilly's product by name based on a misleading comparison.[5]

### LILLY'S COMPARATIVE ADVERTISING FOR MOUNJARO®

67.    Lilly also disseminated a national television commercial making similar comparative claims for Mounjaro®, Lilly's tirzepatide medicine indicated for type 2 diabetes.  In that commercial, Lilly expressly compares Mounjaro® to Novo Nordisk's Ozempic® and presents a side-by-side efficacy claim stating that Lilly's Mounjaro® 15 mg reduced A1c by 2.3%, compared to a 1.9% A1c reduction for Novo Nordisk's Ozempic® 1 mg.  The advertisement includes small-print disclosure language stating:  "Ozempic 2mg not available at time of study."



---

[5] *See Baum v. AstraZeneca LP*, 605 F. Supp. 2d 669, 678 (W.D. Pa. 2009), *aff'd on other grounds*, 372 F. App'x 246 (3d Cir. 2010) ("The purpose of [consumer-directed ] advertisements is simple: to impress upon consumers that a particular pharmaceutical may be appropriate for their use, thus encouraging them to query their personal physicians about prescribing that pharmaceutical."); *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 383 (2002) (Breyer, J., dissenting) ("There is considerable evidence that consumer oriented advertising will create strong consumer-driven demand for a particular drug. … And there is strong evidence that doctors will often respond affirmatively to a patient's request for a specific drug that the patient has seen advertised.").

68.    Like Lilly's Zepbound® advertising, Lilly's Mounjaro® television commercial relies on an outdated comparison—remarkably, it relies on a clinical trial that was conducted over five years ago.  The advertised comparison is based on SURPASS-2, which compared Mounjaro® 5 mg, 10 mg, and 15 mg against Ozempic® 1 mg.  But, as Lilly knows well, more than four years ago the FDA approved Ozempic® 2 mg, the highest and most effective approved maintenance dose of Ozempic®.  Rather than conduct a new trial comparing the highest and most effective dose of Mounjaro® to the highest and most effective dose of Ozempic®, Lilly elected to launch a new advertising campaign that cites stale five-year-old data.  Lilly's strained effort to avoid false advertising liability by mentioning, in an inconspicuous footnote, that Ozempic® 2 mg was not available at the time of SURPASS-2 fails to cure the primary advertising message.  In addition to being unnoticed, the footnote is also ambiguous and incomplete:  it does not adequately correct the misleading impression created by the advertisement and withholds the key fact that Ozempic® 2 mg is significantly more effective than Ozempic® 1 mg.  Indeed, given that there are no head-to-head trials comparing the highest and most effective doses of Mounjaro® and Ozempic®, it is inappropriate for Lilly to make any comparative efficacy claims at all.

69.    Lilly makes the same comparison on its consumer-facing Mounjaro® website.  The website states that "Mounjaro lowered A1C more than Ozempic 1 mg" and displays a bar graph showing average A1C reductions of 2.0% for Mounjaro® 5 mg, 2.2% for Mounjaro® 10 mg, and 2.3% for Mounjaro® 15 mg, compared to 1.9% for Ozempic® 1 mg.  The website also inadequately and passingly states that "Ozempic 2 mg was not available at the time of the study."  Like the television commercial, however, the website presents the same outdated comparison between the three approved maintenance doses of Mounjaro® and a single dose of Ozempic® that is not the highest and most effective.  And neither the television commercial nor the website

31

does anything to warn consumers about the less rigorous nature of the open-label trial cited, or that its findings are therefore less certain.



70.    As Lilly knows well, Ozempic® 2 mg has been clinically studied and has been shown to reduce A1c by 2.1%. Specifically, SUSTAIN FORTE evaluated semaglutide 2 mg (Ozempic® 2 mg) against semaglutide 1 mg (Ozempic® 1 mg) in adults with type 2 diabetes over a 40-week treatment period and found that participants receiving Ozempic® 2 mg achieved an average A1c reduction of 2.1%. This further shows that Lilly's claimed 2.3% to 1.9% comparison is misleading and cannot be substantiated.

### LILLY'S MISLEADING ORFORGLIPRON (FOUNDAYO®) MESSAGING

71.    Lilly's deceptive conduct is not limited to the Zepbound® and Mounjaro® advertising described above. That advertising is the latest and most egregious example in a

broader pattern of conduct designed to mislead consumers about the comparative efficacy of Lilly's medicines versus Novo Nordisk's semaglutide medicines.  Lilly employed the same playbook with its weight-management medicine, Foundayo® (orforglipron), issuing messaging that misleadingly frames orforglipron's efficacy relative to Novo Nordisk's oral semaglutide medicines.

72.    In September 2025, Lilly issued a press release with the headline: "Lilly's oral GLP-1, orforglipron, superior to oral semaglutide in head-to-head trial."  A sub-heading touted that "participants taking the highest dose of orforglipron lost an average of 19.7 lbs (9.2%) vs. 11.0 lbs (5.3%) with oral semaglutide, a 73.6% relative improvement."[6]  But the trial did not compare orforglipron to the highest dose of oral semaglutide—let alone the 25 mg dose that was then pending FDA approval for weight management and would later be approved as the Wegovy® tablet.  Instead, the press release was based on Lilly's ACHIEVE-3 clinical trial, an open-label study in adults with type 2 diabetes that compared orforglipron (12 mg and 36 mg) against oral semaglutide at only 7 mg and 14 mg—the doses approved for diabetes under the brand name Rybelsus®.  The trial's primary endpoint was A1c reduction; weight loss was merely a secondary endpoint.  Yet Lilly publicly touted the trial as a "gold standard" head-to-head comparison.

---

[6] Eli Lilly and Company, *Lilly's oral GLP-1, orforglipron, superior to oral semaglutide in head-to-head trial* (Sept. 17, 2025), https://www.prnewswire.com/news-releases/lillys-oral-glp-1-orforglipron-superior-to-oral-semaglutide-in-head-to-head-trial-302559090.html.  Lilly also published a news release on its investor-facing website with a headline including "Lilly's oral GLP-1, orforglipron, delivered superior blood sugar control and weight loss compared to oral semaglutide in head-to-head type 2 diabetes trial."  Lilly Investors, *Lilly's oral GLP-1, orforglipron, delivered superior blood sugar control and weight loss compared to oral semaglutide in head-to-head type 2 diabetes trial published in The Lancet* (Feb. 26, 2026), https://investor.lilly.com/news-releases/news-release-details/lillys-oral-glp-1-orforglipron-delivered-superior-blood-sugar.

73.     On information and belief, Lilly issued this press release with full knowledge that Novo Nordisk had already submitted an FDA application for oral semaglutide 25 mg for weight loss, and that approval was anticipated before the end of 2025.  Upon information and belief, Lilly timed the release to create a consumer misimpression of orforglipron's superiority before either orforglipron (later approved as Foundayo®) or Novo Nordisk's oral semaglutide 25 mg (later approved as the Wegovy® tablet) reached the market.

74.     The headline's blanket reference to "oral semaglutide," without qualification, necessarily misleads consumers into believing that orforglipron is superior to Novo Nordisk's oral semaglutide medicines across all doses and indications, including for weight management. It does not disclose that the comparator was limited to the lower diabetes doses (7 mg and 14 mg), not the higher dose pending approval for weight loss.  Nor does it disclose that the claimed weight loss superiority rested on a secondary endpoint of a diabetes trial.  By presenting an unqualified superiority claim over "oral semaglutide," Lilly's messaging invites consumers to draw exactly the conclusion the data does not support:  that Foundayo® produces greater weight loss than the Wegovy® tablet.

75.     That deception has only grown more harmful as the marketplace has changed.  In December 2025, Novo Nordisk received FDA approval for the Wegovy® tablet (oral semaglutide 25 mg) for weight management, and the pivotal clinical trial supporting that dose (OASIS 4) reported greater weight loss efficacy than the pivotal trial supporting the highest dose of orforglipron (ATTAIN-1).  To the extent Lilly continues to disseminate its unqualified "superior to oral semaglutide" message, that message is false because it does not reflect the comparative efficacy of the medicines as they are available to patients today.

76.     This history shows that Lilly's recent Zepbound® and Mounjaro® advertising are not isolated occurences but rather part of a deliberate and continuing strategy of comparing Lilly's medicines to lower or less effective doses of Novo Nordisk's semaglutide medicines while obscuring that Novo Nordisk's highest approved doses tell a materially different story.  And one needs to look no further than how Novo Nordisk adjusted its marketing campaign of the Wegovy® tablets to see how a responsible pharmaceutical company modifies its advertising in response to new information.  Indeed, Novo Nordisk initially marketed its Wegovy® tablets as the "only FDA-approved GLP-1 RA pill for weight loss" but took action to remove those claims from the market once Foundayo® also received FDA approval.

## LILLY'S FALSE AND MISLEADING ADVERTISING CLAIMS

77.     Lilly's challenged advertising is false by necessary implication.  Although individual statements in the advertising may accurately describe results from the particular trials Lilly chose to feature, the advertising as a whole communicates unambiguous comparative superiority messages that are false or misleading:  Lilly's Zepbound® advertising inaccurately communicates that Zepbound® is dramatically more effective than Wegovy® for weight loss, and Lilly's Mounjaro® advertising inaccurately communicates that Mounjaro® is dramatically more effective than Ozempic® for A1c reduction.  Those are the messages a reasonable consumer will necessarily take away from the advertising, and they are the messages Lilly intends to communicate.  But those messages are false and misleading.  Lilly's advertised comparisons do not test or reflect the highest and most effective approved maintenance doses of Novo Nordisk's medicines now available to patients, which, in both cases, would achieve significantly better results.

78.    Across both campaigns, Lilly uses the same misleading structure:  it selects an outdated trial comparing Lilly's medicine to a lower dose Novo Nordisk comparator, displays the resulting numerical difference as a brand level superiority claim, and relegates the dose limitation to wholly inadequate disclosures that do not explain why the comparison is incomplete.

79.    Every element of Lilly's Zepbound® advertising is designed to convey a product-level superiority message.  Lilly presents Zepbound® and Wegovy® in a direct side-by-side comparison.  It displays the weight loss figures—"50 LBS" and "33 LBS"—in large, prominent text that dominates the screen.  The voiceover in the commercial reinforces the comparison in plain language.  The medicines are identified by brand name.  Although Lilly includes a cursory written disclosure stating that Wegovy® 7.2 mg was not evaluated in the study and has since been approved, that disclosure does not adequately correct the misleading impression created by the advertisement.  The disclosure does not explain the significance of the omitted dose information or tell consumers that another study showed that the highest dose of Wegovy® achieved clinically consistent weight loss to the highest dose of Zepbound®.  Instead, the advertising prominently presents a clean, side-by-side comparison of 50 pounds versus 33 pounds and omits the qualifications and context necessary for consumers to understand the comparison's limitations.  A reasonable consumer viewing the advertisement would be deceived and misunderstand it to mean one thing: Zepbound® is, by far, the more effective medicine.  That false impression carries an additional consequence:  it may distract consumers away from the fact that Wegovy® and Ozempic® carry FDA-approved indications for cardiovascular risk reduction and kidney protection in appropriate patients that Lilly's medicines do not—benefits that would be highly material to patients' treatment decisions if they understood that the weight loss difference between the two medicines is, at their highest approved doses, clinically consistent.

80.     Lilly's Mounjaro® advertising conveys the same type of misleading product-level superiority message.   In a national television commercial, Lilly presents Mounjaro® and Ozempic® in a direct side-by-side comparison and prominently states that Mounjaro® 15 mg reduced A1c by 2.3% compared to 1.9% for Ozempic® 1 mg.  Lilly repeats the same comparison on its consumer-facing Mounjaro® website, which states that "Mounjaro lowered A1C more than Ozempic 1 mg" and displays a bar graph showing average A1c reductions of 2.0% for Mounjaro® 5 mg, 2.2% for Mounjaro® 10 mg, and 2.3% for Mounjaro® 15 mg, compared to 1.9% for Ozempic® 1 mg.  The net impression is that Mounjaro® provides dramatically superior glycemic control to Ozempic®.  But the advertised comparison is based on SURPASS-2, which compared Mounjaro® 5 mg, 10 mg, and 15 mg only against Ozempic® 1 mg.   It did not compare Mounjaro® to Ozempic® 2 mg, the highest and most effective approved maintenance dose of Ozempic® now available to patients.

81.     Lilly's advertising is also a false establishment claim.  By invoking specific clinical trials as the basis for its comparative messages, Lilly communicates that scientific evidence establishes the dramatic superiority of its medicines over Novo Nordisk's competing medicines. But the trials Lilly features do not establish those conclusions.  SURMOUNT-5 did not test the highest approved Wegovy® injection dose now available to patients.  A trial that compared Zepbound®'s two highest maintenance doses to the two lowest Wegovy® maintenance doses cannot establish a present-day product superiority claim.  The more comparable clinical evidence for Wegovy® undermines Lilly's advertised superiority messages.  Lilly's own double-blind SURMOUNT-1 trial, when compared to Novo Nordisk's double-blind STEP UP trial, shows that the highest and most effective maintenance doses of the two medicines produce clinically consistent weight loss, not the dramatic superiority that Lilly's advertising communicates.

82. As to Ozempic®, SURPASS-2 compared Mounjaro®'s approved maintenance doses only to Ozempic® 1 mg, not to Ozempic® 2 mg, and therefore cannot establish a present-day product superiority claim over Ozempic® at its highest approved maintenance dose. Because there is no head-to-head clinical trial that compares Mounjaro® 5 mg, 10 mg, and 15 mg against Ozempic® 2 mg, or even separate but similar clinical trials, there is no basis for Lilly to make any comparisons of this kind in direct-to-consumer advertising.

83. Lilly's advertising is further misleading because the trials it features have material design limitations that Lilly does not adequately explain to consumers. SURMOUNT-5 was not double-blinded, and Lilly even concedes in its otherwise inadequate disclaimers in its Zepbound® advertising that the study was "less rigorous" and the findings "less certain." SURPASS-2 likewise was not double-blinded, but Lilly's Mounjaro® television commercial and website advertising do not even contain the comparable (though inadequate) disclosure informing consumers that the study was open-label, less rigorous, or that its findings are less certain. Lilly therefore asks consumers to accept the Mounjaro® comparison as definitive proof of superiority without providing even the limited, insufficient methodological warning it provides for SURMOUNT-5. Those limitations are especially material in DTC advertising, where consumers are unlikely to understand how study design may affect the comparative results being advertised. Healthcare professionals, by contrast, are trained to scrutinize trial design and may be aware of Novo Nordisk's newer, higher approved doses. But by the time a patient arrives at a healthcare professional's office already deceived into believing that Zepbound® is dramatically more effective than Wegovy®, that false impression can be difficult to dislodge.

84. Lilly's disclaimers do not and cannot cure the deception. When an advertisement's dominant message is false or misleading, a disclaimer cannot transform that message into a

38

truthful one; all it actually does is highlight the contradiction between what the ad says and what is true.[7]  Here, Lilly's Zepbound® advertising discloses that "Wegovy 7.2 mg was not evaluated in this study" and that it "has since been approved," but that disclosure appears only in written text and is visually subordinate to the dominant 50-pound-versus-33-pound comparison. Similarly, Lilly's Mounjaro® advertising discloses that "Ozempic 2 mg was not available at the time of the study," but then continues to present a side-by-side comparison of Mounjaro® 15 mg against Ozempic® 1 mg.  In both instances, Lilly's disclosures fail to explain the significance of the missing highest dose comparison or disclose that the highest and most effective approved Novo Nordisk dose has been studied and shown results that are far closer to the results reported for Lilly's medicine than Lilly's advertising suggests.

85.    The omitted and obscured information is material to consumers.  Weight loss efficacy is central to consumers considering GLP-1 treatment for weight reduction and management, and A1c reduction is central to consumers considering GLP-1 treatment for type 2 diabetes.  Lilly's advertising is designed to influence patient decisions, patient-professional discussions, and resulting prescribing decisions by deceiving consumers into believing that Lilly's medicines produce superior results to Novo Nordisk's competing medicines.  Consumers

---

[7] *See Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 464 (D.N.J. 2009) ("[F]alse claims are not excused or remedied by the use of footnotes because 'a footnote or disclaimer that "purports to change the apparent meaning of the claims and render them literally truthful, but which is so inconspicuously located or in such fine print that readers tend to overlook it, will not remedy the misleading nature of the claims."'") (quoting *SmithKline Beecham Consumer Healthcare, L.P. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 906 F. Supp. 178, 182 (S.D.N.Y. 1995), *aff'd*, 100 F.3d 943 (2d Cir. 1996)); *McNeil-PPC, Inc. v. Pfizer Inc.*, 351 F. Supp. 2d 226, 254 (S.D.N.Y. 2005) (finding "few words of disclaimer are lost when the [impliedly false] ads are considered as a whole," especially since "the point of an implied falsity claim is that even though an advertisement 'is literally true it is nevertheless likely to mislead or confuse consumers.'") (citation omitted).

would consider it important that Lilly's comparisons exclude the highest and most effective approved doses of Wegovy® and Ozempic® and that more comparable highest dose data do not show the dramatic superiority Lilly's advertising conveys but rather demonstrate that the medicines are clinically consistent. Consumers would also consider it important that Novo Nordisk's semaglutide medicines carry FDA-approved indications for reducing the risk of major adverse cardiovascular events and for kidney protection—indications that Lilly's competing medicines do not share—and those benefits become far more meaningful to patients once Lilly's false claim of dramatic weight loss superiority is corrected.

86. Accordingly, Lilly's challenged advertising falsely, misleadingly, and deceptively communicates that Zepbound® provides a large, clinically meaningful weight loss advantage over Wegovy® and that Mounjaro® provides materially superior A1c reduction compared to Ozempic®. The advertising is deceptive because it relies on clinical trials that did not test the highest and most effective approved maintenance doses of Novo Nordisk's medicines and presents the results as supporting broad superiority claims without adequately accounting for the limitations of the comparisons Lilly chose to feature. The advertising is likely to deceive consumers, is material to treatment-related decision-making, and has injured and will continue to injure Novo Nordisk.

### CONSUMERS AND NOVO NORDISK HAVE BEEN HARMED BY LILLY'S FALSE AND MISLEADING ADVERTISING

87. Novo Nordisk and Lilly are direct competitors in the market for GLP-1 medicines used for weight reduction and management and the treatment of type 2 diabetes. Wegovy® and Zepbound® compete for the same patients, healthcare-professional attention, prescriptions, and market share in weight reduction and management. Ozempic® and Mounjaro® likewise compete for patients, healthcare-professional attention, prescriptions, and market share in type 2-diabetes.

Lilly's false and misleading comparative advertising therefore has a direct impact on Novo Nordisk's business.

88.   Lilly's false and misleading advertising diverts patient demand and prescriptions from Novo Nordisk's medicines to Lilly's medicines.  Consumers exposed to Lilly's Zepbound® advertising are likely to falsely believe that Zepbound® produces dramatically greater weight loss than Wegovy® and, on that basis, to ask their healthcare professionals about Zepbound® instead of Wegovy®.  Consumers exposed to Lilly's Mounjaro® advertising are likewise likely to falsely believe that Mounjaro® provides dramatically greater A1c reduction than Ozempic® and, on that basis, to ask their healthcare professionals about Mounjaro® instead of Ozempic®.

89.   The harm extends beyond the specific doses directly compared in Lilly's advertising.  Lilly's Zepbound® advertising refers to the Wegovy® brand as a whole, and patients exposed to the false superiority message are likely to be deterred from the broader Wegovy® product family, including Wegovy® in oral tablet form.  Lilly's Mounjaro® advertising similarly refers to Ozempic® as a product and brand, while comparing Mounjaro® to Ozempic® 1 mg rather than Ozempic® 2 mg, and patients exposed to the false superiority message are likely to be deterred from the broader Ozempic® product family, including Ozempic® in oral tablet form.

90.   Lilly's advertising also causes reputational and goodwill harm that cannot be fully remedied through money damages.  Novo Nordisk has invested decades of research and billions of dollars building the Wegovy® and Ozempic® brands through scientific innovation, clinical research, and responsible advertising.  The reputations of Wegovy® and Ozempic® depend in substantial part on patients' understanding of their clinical efficacy.  Lilly's advertising falsely diminishes those medicines by portraying them as substantially less effective than Lilly's competing medicines—a characterization that is contradicted by current data regarding Novo

Nordisk's highest and most effective approved maintenance doses. Once patients absorb the false impression that Novo Nordisk's medicines are inferior, that reputational damage is difficult to reverse even if the advertising is later withdrawn.

91.    The harm is compounded by the scale and reach of Lilly's advertising campaigns. On information and belief, Lilly's challenged Zepbound® television commercial has aired nationally across major broadcast and cable networks, reaching millions of consumers during the period in which patients are actively evaluating GLP-1 treatment options. Since the revised television commercial began airing on or about April 27, 2026, it has received more than 700 million impressions. Lilly also disseminates the same false comparative claim on its consumer-facing Zepbound® website and through sponsored social media advertising, including on TikTok and Facebook. Lilly's challenged Mounjaro® advertising likewise includes a national television commercial and content on Lilly's consumer-facing Mounjaro® website, all of which present the same misleading comparison of Mounjaro® against Ozempic® 1 mg. The breadth of Lilly's campaign means that its false superiority messages are being absorbed by a large and growing audience of prospective patients, amplifying the competitive harm to Novo Nordisk with each day the advertising continues to run.

92.    The harm to Novo Nordisk is particularly acute because the GLP-1 market is at an inflection point. Millions of new patients are entering the market and making first-time treatment decisions based on the information available to them. In this environment, misleading comparative advertising causes harm that cannot be remedied through money damages alone. Every day that Lilly's false advertising continues is a day in which new patients are forming product perceptions based on misleading comparisons that will shape interactions between

consumers and their healthcare professionals, and subsequent prescribing decisions, long after the advertising itself has ceased (assuming Lilly terminates the advertising at all).

93.    Consumers are independently harmed by Lilly's false advertising.    Patients considering GLP-1 treatment for chronic weight management or type 2 diabetes are making consequential decisions about their health.    They deserve to make those decisions, and to have informed discussions with their healthcare professionals, based on accurate, current, and complete information about available treatments.    Lilly's advertising deprives them of that information by presenting stale and incomplete comparisons on the Wegovy®, Ozempic®, Zepbound®, and Mounjaro® treatment options available today.    This harm is compounded by the fact that healthcare professionals, who possess the clinical training to evaluate trial limitations and may be aware of updated dosing options, are not the audience for this advertising—consumers are.    And consumers, unlike their doctors, have no independent means of knowing that the comparison Lilly presents is built on outdated data and lower doses of Novo Nordisk's medicines than are currently available.

94.    Patients focused on achieving weight reduction may be misled into believing that Zepbound® offers a clinically meaningful weight loss advantage over Wegovy®.    Patients focused on A1c control may similarly be misled into believing that Mounjaro® offers a materially greater A1c reduction than Ozempic®.    As a result, patients may specifically request Lilly's medicines with their healthcare professionals based on false impressions about comparative efficacy.

95.    For these reasons, preliminary and permanent injunctive relief is necessary.    The harm to Novo Nordisk is irreparable because it involves ongoing loss of goodwill, reputational damage, diversion of patients and prescriptions, and entrenched market-share shifts that cannot

be fully remedied through money damages. Lilly should be barred from continuing to disseminate the challenged comparative advertising, or materially similar advertising, based on SURMOUNT-5 or SURPASS-2 in a manner that communicates a current superiority message the trials do not support.

**COUNT ONE**
**FALSE ADVERTISING AND UNFAIR COMPETITION**
**UNDER SECTION 43(A) OF THE LANHAM ACT, 15 U.S.C. § 1125(a)**

96.     Novo Nordisk repeats and realleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

97.     Lilly's comparative advertising based on the results of the SURMOUNT-5 and SURPASS-2 trials constitutes false advertising and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Lilly's advertising is false and misleading because, among other things, it relies on outdated trials that did not test the highest and most effective approved doses of Novo Nordisk's medicines currently available to patients, and presents the comparisons in those outdated trials as supporting broad product superiority claims.

98.     Lilly's knowingly false and misleading advertising has a tendency to deceive and mislead consumers into believing that Zepbound® produces far greater weight loss than Wegovy®, and that Mounjaro® provides materially greater A1c reduction than Ozempic®.

99.     Those messages are false or misleading because Lilly's Zepbound® advertising is based on SURMOUNT-5, which did not evaluate Wegovy® 7.2 mg, and Lilly's Mounjaro® advertising is based on SURPASS-2, which did not evaluate Ozempic® 2 mg.

100.    The message that Zepbound® is far more effective than Wegovy® is false or misleading because it is based on a trial that did not test Wegovy® 7.2 mg, the highest and most effective approved Wegovy® injection dose now available to patients. Similarly, the message

44

that Mounjaro® provides materially superior A1c reduction compared to Ozempic® is false or misleading because it is based on a trial that did not test Ozempic® 2 mg, the highest and most effective approved Ozempic® injection dose now available to patients. Lilly's advertising presents comparisons of Lilly's medicines against lower dose Novo Nordisk comparators as though they reflect the comparable treatment options available to patients today. SURMOUNT-5 and SURPASS-2 are not sufficient to support the unqualified, present-day superiority messages Lilly communicates because they did not evaluate the highest and most effective approved maintenance doses of the Novo Nordisk medicines and included trial-design limitations that Lilly does not adequately explain to consumers.

101. In reality, the current clinical evidence does not support the stark differences in overall product efficacy that Lilly promotes, whether between Zepbound® and Wegovy®, or between Mounjaro® and Ozempic®.

102. Lilly's false and misleading claims are material in that they are likely to influence consumers' discussions with their healthcare professionals and subsequent treatment-related purchasing decisions regarding GLP-1 medicines for weight management and type 2 diabetes, including consumers' choices among injectable and oral treatment options.

103. Lilly has sold and advertised Zepbound® and Mounjaro® in interstate commerce throughout the United States, including in this District.

104. As a result of Lilly's actions, Novo Nordisk has been and will continue to be harmed. Lilly's false and misleading comparative advertising campaign causes great and irreparable injury to Novo Nordisk's business in the form of diverted sales and damaged reputation and goodwill, in an amount that cannot be presently ascertained.

105.    By reason of the foregoing, Novo Nordisk is entitled to preliminary and permanent injunctive relief against Lilly, restraining Lilly from further acts of false advertising and unfair competition, and to recover damages caused by reason of Lilly's aforesaid acts in an amount to be determined at trial.

## COUNT TWO
## UNFAIR COMPETITION UNDER N.J. STAT. ANN. § 56:4-1

106.    Novo Nordisk repeats and realleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

107.    Lilly's comparative advertising based on the results of the SURMOUNT-5 and SURPASS-2 trials constitutes unfair competition in violation of N.J. Stat. Ann. § 56:4-1. Lilly's advertising is false and misleading because, among other things, it relies on outdated trials that did not test the highest and most effective approved doses of Novo Nordisk's medicines currently available to patients, and presents the comparisons in those outdated trials as supporting broad product superiority claims.

108.    Lilly's knowingly false and misleading advertising has a tendency to deceive and mislead consumers into believing that Zepbound® produces far greater weight loss than Wegovy®, and that Mounjaro® provides materially greater A1c reduction than Ozempic®.

109.    Lilly's advertising falsely or misleadingly communicates that Zepbound® is far more effective than Wegovy® because it is based on a trial that did not test Wegovy® 7.2 mg, the highest and most effective approved Wegovy® injection dose now available to patients. Similarly, Lilly's advertising falsely or misleadingly communicates an unfair comparison because it is based on a trial that did not test Ozempic® 2 mg, the highest and most effective approved Ozempic® injection dose now available to patients.

110.   In reality, the current clinical evidence does not support the stark differences in overall product efficacy that Lilly promotes, whether between Zepbound® and Wegovy®, or between Mounjaro® and Ozempic®.

111.   Lilly's false and misleading claims are material in that they are likely to influence consumers' discussions with their healthcare professionals and subsequent treatment-related purchasing decisions regarding GLP-1 medicines for weight management and type 2 diabetes, including consumers' choices among injectable and oral treatment options.

112.   Lilly has sold and advertised Zepbound® and Mounjaro® in interstate commerce throughout the United States, including in this District.

113.   As a result of Lilly's actions, Novo Nordisk has been and will continue to be harmed.   Lilly's false and misleading comparative advertising campaign causes great and irreparable injury to Novo Nordisk's business in the form of diverted sales and damaged reputation and goodwill, in an amount that cannot be presently ascertained.

114.   By reason of the foregoing, Novo Nordisk is entitled to preliminary and permanent injunctive relief against Lilly, restraining Lilly from further acts of false advertising and unfair competition, and to recover damages caused by reason of Lilly's aforesaid acts in an amount to be determined at trial.

**COUNT THREE**
**UNFAIR COMPETITION UNDER NEW JERSEY COMMON LAW**

115.   Novo Nordisk repeats and realleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

116.   Lilly's comparative advertising based on the results of the SURMOUNT-5 and SURPASS-2 trials constitutes unfair competition in violation of New Jersey common law.   Lilly has engaged in deceptive commercial conduct by disseminating false and misleading comparative

advertising that relies on outdated trials that did not test the highest and most effective approved maintenance doses of Novo Nordisk's medicines currently available to patients and that presents the incomplete comparisons in those outdated trials as supporting broad product superiority claims.

117.   Lilly's knowingly false and misleading comparative advertising is likely to deceive and mislead consumers into believing that Zepbound® produces far greater weight loss than Wegovy®, and that Mounjaro® provides materially greater A1c reduction than Ozempic®.

118.   Lilly's advertising falsely or misleadingly communicates that Zepbound® is far more effective than Wegovy® because it is based on a trial that did not test Wegovy® 7.2 mg, the highest and most effective approved Wegovy® injection dose now available to patients. Similarly, Lilly's advertising falsely or misleadingly communicates that Mounjaro® provides materially superior A1c reduction compared to Ozempic® because it is based on a trial that did not test Ozempic® 2 mg, the highest and most effective approved Ozempic® injection dose now available to patients.

119.   In reality, the current clinical evidence does not support the stark differences in overall product efficacy that Lilly promotes, whether between Zepbound® and Wegovy®, or between Mounjaro® and Ozempic®.

120.   Lilly's false and misleading claims are material in that they are likely to influence consumers' discussions with their healthcare professionals and subsequent treatment-related purchasing decisions regarding GLP-1 medicines for weight management and type 2 diabetes, including consumers' choices among injectable and oral treatment options.

121.   Lilly has sold and advertised Zepbound® and Mounjaro® in interstate commerce throughout the United States, including in this District.

122. As a result of Lilly's actions, Novo Nordisk has been and will continue to be harmed. Lilly's false and misleading comparative advertising campaign causes great and irreparable injury to Novo Nordisk's business in the form of diverted sales and damaged reputation and goodwill, in an amount that cannot be presently ascertained.

123. By reason of the foregoing, Novo Nordisk is entitled to preliminary and permanent injunctive relief against Lilly, restraining Lilly from further acts of false advertising and unfair competition, and to recover damages caused by reason of Lilly's aforesaid acts in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests that this Court:

A. Enter judgment that Defendants have engaged in false advertising and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

B. Enter judgment that Defendants have engaged in unfair competition in violation of N.J. Stat. Ann. § 56:4-1 and New Jersey common law.

C. Order a preliminary and permanent injunction enjoining and restraining Defendants and all those acting in concert or participation with Defendants from disseminating, in any medium, any advertisement or promotional material that claims or implies that Zepbound® produces superior weight loss to Wegovy® based on SURMOUNT-5 or any other comparison that does not include Wegovy® 7.2 mg, or that states, claims, or implies that patients taking Wegovy® can expect to lose only 33 pounds or only 13.7% of body weight.

D. Order a preliminary and permanent injunction enjoining and restraining Defendants and all those acting in concert or participation with Defendants from disseminating, in any medium, any advertisement or promotional material that claims or implies that Mounjaro®

provides superior A1c reduction to Ozempic® based on SURPASS-2 or any other comparison that does not include Ozempic® 2 mg, or that states, claims, or implies that patients taking Ozempic® can expect only a 1.9% reduction in A1c.

E.      Order a preliminary and permanent injunction enjoining and restraining Defendants and all those acting in concert or participation with Defendants from disseminating to lay consumers (e.g., not including healthcare professionals), in any medium, any advertisement or promotional material that reports on the comparative results of SURMOUNT-5 or SURPASS-2, in a manner that claims or implies a current product superiority message based on those trials.

F.      Order Defendants to conduct a corrective advertising campaign to inform consumers that Lilly's comparative advertisements based on SURMOUNT-5 conveyed a deceptive comparison of the current efficacy of Zepbound® versus Wegovy® and that Lilly's comparative advertisements based on SURPASS-2 conveyed a deceptive comparison of the current efficacy of Mounjaro® versus Ozempic®.

G.      Award all damages sustained by Plaintiff as a result of Defendants' unlawful conduct, and treble amounts as authorized by 15 U.S.C. § 1117(a).

H.      Award any and all of Defendants' profits received by Defendants from sales made and revenues collected as a result of their unlawful acts, including treble amounts as authorized by 15 U.S.C. § 1117(a).

I.      Award Plaintiff the costs of litigation and attorneys' fees to the full extent provided for under the law.

J.      Award Plaintiff pre- and post-judgment interest.

K.      Grant any other and further relief the Court deems just and proper.

Dated:      July 21, 2026
             New York, New York

DEBEVOISE & PLIMPTON LLP


By: */s/ Megan K. Bannigan*
    David H. Bernstein (dhbernstein@debevoise.com)*
    Megan K. Bannigan (mkbannigan@debevoise.com)
    Jared I. Kagan (jikagan@debevoise.com)*
    Marissa Baron (mbaron@debevoise.com)*
    Rachel Burns (rmburns@debevoise.com)*
    DEBEVOISE & PLIMPTON LLP
    66 Hudson Boulevard
    New York, New York 10001
    (212) 909-6000
    *Attorneys for Plaintiff Novo Nordisk Inc.*

    **Pro Hac Vice* forthcoming

51

**LOCAL CIVIL RULE 11.2 CERTIFICATION**

Pursuant to Local Civil Rule 11.2, Plaintiff Novo Nordisk Inc., by and through their attorneys, certify that insofar as the matter in controversy is a false advertising claim, the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

Dated:        July 21, 2026
              New York, New York


                        DEBEVOISE & PLIMPTON LLP


                        By: */s/ Megan K. Bannigan*
                            Megan K. Bannigan (mkbannigan@debevoise.com)
                            DEBEVOISE & PLIMPTON LLP
                            66 Hudson Boulevard
                            New York, New York 10001
                            (212) 909-6000
                            *Attorneys for Plaintiff Novo Nordisk Inc.*

## **LOCAL CIVIL RULE 201.1 CERTIFICATION**

Pursuant to Local Civil Rule 201.1, Plaintiff Novo Nordisk Inc., by and through their

attorneys, certify that the above-captioned matter is not subject to compulsory arbitration in that

the Plaintiff seeks, inter alia, injunctive relief.

Dated:        July 21, 2026
              New York, New York


                          DEBEVOISE & PLIMPTON LLP


                          By: */s/ Megan K. Bannigan*
                              Megan K. Bannigan (mkbannigan@debevoise.com)
                              DEBEVOISE & PLIMPTON LLP
                              66 Hudson Boulevard
                              New York, New York 10001
                              (212) 909-6000
                              *Attorneys for Plaintiff Novo Nordisk Inc.*

53